Sarah C. Wallace, Appellant, v. Samuel L. Wallace, Wilbert O. Nichols, Gertrude E. Nichols, Anna Fling, Arthur Fling and D. C. Smith, Appellees.

1. DIVORCE, § 127*—*when lien of decree for alimony is in personam.* Where a decree for alimony does not make it a lien on land which is described in the decree, the lien of the decree is that of a decree *in personam* and not a decree *in rem.*

2. DIVORCE, § 128*—*when decree for payment of alimony does not become lien on land.* An order for temporary alimony and a final decree adjudging and ordering that the defendant pay a certain sum per year as permanent alimony to the complainant, payable in semiannual instalments, does not become a lien on the land then owned by the defendant which automatically remains in force after the expiration of a year from the rendering of a decree, where the decree does not in terms declare the alimony to be a lien on the land.

3. DIVORCE, § 127*—*when purchaser from defendant in divorce action takes land free from lien for alimony.* A purchaser of land from a defendant in a divorce suit after the expiration of one year from the entering of the decree against the defendant, providing for the payment of alimony in instalments, but not making the alimony a lien on the land, where no execution has been issued on the decree, takes the land free from any lien thereon.

Appeal from the Circuit Court of Shelby county; the Hon. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 21, 1916.

E. O. RICHARDSON, W. W. HARTSELL, EDWARD C. CRAIG and DONALD B. CRAIG, for appellant.

CHAFFEE, CHEW & BAKER and BRYAN H. TIVNEN, for appellees.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Sarah C. Wallace in October, 1914, filed a bill in equity in the Circuit Court of Shelby county, praying that certain sums due her as temporary and perma-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number,

nent alimony from Samuel L. Wallace be declared a lien upon the land in Shelby county owned by Wallace at the time the order for temporary alimony and the decree for divorce and permanent alimony were entered in the said Circuit Court, in a suit for divorce brought by her against Samuel L. Wallace, which land had been conveyed to Nichols and others after the final decree had been entered in the divorce suit. Nichols and Fling answered the bill setting up that they were bona fide purchasers for value of the said land conveyed by Wallace to Nichols after the order and decree had been entered in the divorce suit, and denying that the decree by any of its terms provided that either the temporary or permanent alimony should be a lien on said land and that the same is or has at any time been a lien on any of said land. Smith also filed an answer setting up that he loaned the money, for which a mortgage was made to him by Wallace on said land, by virtue of an order of the Circuit Court made in the divorce proceeding permitting Wallace to mortgage the real estate therein described to raise money to pay to complainant temporary alimony and expense money and in part for expense money for said Wallace. Issues were joined on the pleadings, and on a trial the bill was dismissed for want of equity. Complainant appeals.

There does not appear to be any dispute over the following facts: Sarah C. Wallace in December, 1910, filed a bill for divorce from her husband, Samuel Wallace, in the Circuit Court of Shelby county. In April, 1910, an order was made that Wallace pay to appellant $50 per month temporary alimony on the first day of each month thereafter and also $600 as expense money, and that an injunction theretofore issued be modified to permit Wallace to mortgage a certain twelve acres of land to raise said expense money, alimony and $400 for his own use. A final decree was entered in the divorce case on February 6, 1912, grant-

ing to appellant (1) a divorce and adjudging and decreeing (2) that Samuel L. Wallace deed to appellant a homestead property in Windsor; (3) that appellant is to have the possession and title to certain personal property; (4) that Wallace pay to appellant "as additional alimony the sum of $500 per year, the same to be paid in semi-annual installments of $250, the first payment to be made on the 15th of March, 1912, and the second on the 15th of September, 1912, and subsequent payments to be made at the same time of each year thereafter until the further order of the court; the payments above specified to bear the legal rate of interest from the time the same become due until paid"; and (5) that appellant join with Wallace in conveying to him any and all real estate which he may now own, except the homestead property to be conveyed to appellant, and on failure of appellant to join in said deed that the master in chancery shall make and deliver said deed to Wallace conveying to him all appellant's interest in said real estate including the right of homestead and dower.

At the time the final decree was rendered, $300 of the temporary alimony was due and unpaid and has not yet been paid, unless as is contended by appellee the provisions in the final decree are a release of the unpaid instalments of temporary alimony. The instalments of permanent alimony were paid down to, and including the one which became due, September 15, 1913, but nothing has been paid since that time, and there was $500 of permanent alimony due when the bill in this cause was filed.

At the time the final decree in the divorce case was entered, Wallace owned and was in possession of 112 acres of land in Shelby county, and also the homestead lot in Windsor. On March 6, 1913, Wallace sold and conveyed all said land, except the homestead which had been conveyed to appellant, to Nichols, who had

the conveyance recorded and went into possession of the land. No execution was ever issued either on the order for temporary alimony or the decree for permanent alimony. None could have been issued on the final decree for more than a year after it was entered, as the instalments, becoming due for a year and a half after the entering of the decree, appear to have been paid to the clerk of the court for appellant, either on the day or prior to the day the several instalments became due, up to and including the instalment due September 15, 1913.

Appellant, in her bill, alleges that the deed made by Wallace to Nichols was a pretense and that it was made to evade the payment of alimony. Her counsel admitted on the trial that she was unable to produce any evidence of fraud or bad faith on the part of appellees who answered.

The only question presented for review is whether or not the order for temporary alimony and the final decree adjudging and ordering that Samuel Wallace pay $500 per year for permanent alimony to appellant, payable in semiannual instalments, became a lien on the land then owned by him in Shelby county, which would automatically remain in force after the expiration of a year from the rendering of the decree, when the decree itself does not in terms declare the alimony to be a lien on any of such land. This question appears never to have been presented to either the Supreme or Appellate Courts of this State for adjudication, although the question of the effect of a decree granting alimony and specifically declaring it to be a lien on certain lands has been repeatedly reviewed.

It is contended on behalf of appellant that a decree for the payment of alimony semiannually is a lien on the lands of the party against whom it is entered, by virtue of sections 44 and 45 of the Chancery Act (J. & A. ¶¶ 924, 925). Section 44 of the Chancery Act

provides: ''A decree for money shall be a lien on the lands and tenements of the party against whom it is entered, to the same extent and under the same limitations as a judgment at law.'' Section 45 provides: ''All decrees given in causes in equity in this state shall be a lien on all real estate respecting which such decrees shall be made; and whenever, by any decree, any party to a suit in equity shall be required to perform any act other than the payment of money, or to refrain from performing any act, the court may, in such decree, order that the same shall be a lien upon the real or personal estate, or both, of such party until such decree shall be fully complied with; and such lien shall have the same force and effect, and be subject to the same limitations and restrictions as judgments at law.''

In construing these sections they must be read in connection with sections 1, 2 and 6 of chapter 77 (J. & A. ¶¶ 6747, 6748, 6752)—the Judgment Act, sections 18 and 20 of chapter 40 (J. & A. ¶¶ 4233, 4235)—the Divorce Act, and with sections 42 and 47 of the Chancery Act (J. & A. ¶¶ 922, 927).

Section 1 of chapter 77 (J. & A. ¶ 6747) provides: ''A judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained situated within the county for which the court is held, from the time the same is rendered or revived for the period of seven years and no longer * * * . When execution is not issued on a judgment within one year from the time the same becomes a lien, it shall thereafter cease to be a lien, but execution may issue upon such judgment at any time within seven years, and shall become a lien on such real estate from the time it shall be delivered to the sheriff.''

Section 2 of chapter 77 (J. & A. ¶ 6748) provides: ''When the party in whose favor a judgment is rendered is restrained by injunction, or by appeal, or by the order of a judge or court, or is delayed, on account

of the defendant, either from issuing execution or selling thereon, the time so restrained or delayed shall not be considered as any part of the time mentioned in sections 1 or 6 of this act.''

Section 6 of chapter 77 (J. & A. ¶ 6752) provides: that ''real estate levied upon within seven years from the time the judgment becomes a lien may be sold at any time within one year after the expiration of said seven years.''

Section 18 of chapter 40 (J. & A. ¶ 4233) provides: ''When a divorce shall be decreed, the court may make such order touching the alimony  *  *  *  as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just; and in case the wife be complainant, to order the defendant to give reasonable security for such alimony and maintenance, or may enforce the payment of such alimony and maintenance in any other manner consistent with the rules and practice of the court. And the court may, on application, from time to time, make such alterations in the allowance of alimony  *  *  *  as shall appear reasonable and proper.''

Section 20 of chapter 40 (J. & A. ¶ 4235) provides: ''Whenever in any case of divorce a decree for alimony or maintenance is made a lien on any real estate to secure the payment of any money to become due by installments, and a sale of such real estate shall become necessary to satisfy any of such installments the property shall be sold subject to the lien of the installments not then due unless the court shall direct otherwise, and subsequent sales may, from time to time be made to enforce such lien as the installments may become due, until all installments are paid.''

Section 42 of the Chancery Act (J. & A. ¶ 922) provides: ''When any bill is taken for confessed, or upon the hearing the court may make such decree thereon as may be just, and may enforce such decree, either by sequestration of real and personal estate, by attach-

ment, by fine or imprisonment or both, or by causing possession of real and personal estate to be delivered to the party entitled thereto, and by the exercise of such other powers as pertain to courts of chancery and may be necessary for the attainment of justice.''

Section 47 of the Chancery Act (J. & A. ¶ 927) provides: ''When there shall be no direction that a master in chancery or commissioner execute a decree, the same shall be carried into effect by execution or other final process according to the nature of the case directed to the sheriff, or the court may, if necessary, direct an attachment to be issued against the party disobeying such decree and fine or imprison him or both in the discretion of the court and may also direct a sequestration.''

It will not be questioned that a decree ordering the payment of a certain sum semiannually as alimony is a decree for the payment of money. Where a decree for alimony does not make such alimony a lien on land which is described in the decree, the lien of such decree is that of a decree *in personam* and not a decree *in rem*. It is, under section 44 of the Chancery Act (J. & A. ¶ 924), a lien on all the real estate of the party decreed to make the payments that are located within the county where the decree is entered. A decree for money which does not specifically make its payment a lien on certain described tracts of land, and which is a lien by virtue of section 44 of the Chancery Act, is a lien to the same extent and under the same limitations as a judgment at law. A judgment at law ceases to be a lien on the real estate of the person against whom it is entered, unless within a year from the time it became a lien an execution is issued on such judgment, and the lien may be revived by issuing an execution and placing it in the hands of the sheriff. A purchaser of real estate from a judgment debtor more than a year after a judgment was rendered, upon which no execution has been issued, takes the land freed from any lien of the

judgment. The only exceptions to the rule just stated are those which come within section 2 of the Judgment Act (J. & A. ¶ 6748), to which by judicial construction has been added cases taken to a court of review by a writ of error, wherein a *supersedeas* has been granted.

Appellant contends that liens, created by chancery decrees on lands, are not destroyed by failure to issue execution thereon within a year; that such liens are not subject to the same limitations and restrictions as judgments at law. That is a correct proposition if the chancery decree comes within the purview of the first clause of section 45 of the Chancery Act (J. & A. ¶ 925) and is not solely a money decree, but is a money decree made by the decree a specific lien. Appellant cites *Karnes v. Harper,* 48 Ill. 527; *Kirby v. Runals,* 140 Ill. 289; and *Wilson v. Ford,* 190 Ill. 614, as sustaining her contention. Section 45 of the Chancery Act was not involved or adjudicated upon in the *Wilson* case, *supra.*

In 1868, sections 14 and 45 of the Chancery Act were the same as sections 44 and 45 of the present act. (J. & A. ¶¶ 924, 925.) In *Karnes v. Harper,* decided at that time, it was held that the 14th section declares that a decree for money shall be a lien on the lands of a party against whom it is rendered to the same extent and under the same limitations as a judgment at law. "This section is intended to embrace general decrees for the payment of money, when the proceeding is *in personam* and not specific and *in rem.*" A decree in a foreclosure is in the nature of a decree *in rem.* "The last clause of the 45th section, however, gives the lien to the same extent and subject to the same restrictions as liens created by judgments at law. This section provides for two liens, the first in cases where a decree is in respect to the real estate, to which the decree is pronounced. The second is in cases in which a decree is rendered for the performance of an act other than for the payment of money, and when the court declares

the decree to be a lien on real and personal property until the decree shall be complied with by the party. It will be observed that the words 'such lien' follow in immediate connection with the language creating the second lien provided for by that section, and it manifestly refers to the latter and not the first.'' In the *Kirby* case, *supra,* decided in 1892, Mr. Justice Baker rendering the decision reaffirmed the ruling in the *Karnes* case, *supra,* and further said that when the Legislature re-enacts a law in the same words, that has been judicially construed, it will be presumed it used such words in the sense that had been placed upon them.

Cases involving the question of the lien of decrees for alimony in other States are so affected by local statutes that they are of little value as precedents, but the general rule held by many States is that a decree for alimony creates no specific lien on the estate of the husband unless so provided by statute, or the decree fastens it upon some particular property. 14 Cyc. 782; 2 Am. & Eng. Encyc. of Law 133; 1 R. C. L. 944. A Kansas case, *Scott v. Scott,* 80 Kan. 489, 103 Pac. 1005, is very similar to the case at bar, wherein it was held, under a statute very similar to the Illinois Statute, that such a decree was not a lien on lands conveyed. While a lien may be enforced in equity, the fact that appellant has not sued out an execution and thereby sought to enforce her alleged lien and now seeks to enforce or create a lien by a bill in equity is an admission that the alimony is not a lien that can be enforced under the original decree.

While it may be contended that no execution could have been issued within a year because there was no default in the payment of permanent alimony within that time, there were ample provisions in the statute whereby, under section 42 of the Chancery Act, it could have been made a lien on specific land and such lien would have continued without the issuance of an

execution, or, under section 18 of the Divorce Act, the court could have made Wallace give a mortgage on the land or other reasonable security for the payment of the instalments as they became due, and it had the authority to make such order touching the alimony as was reasonable and just and to enforce the payment of such alimony in any manner consistent with the rules and practice of the court. The sections of the Chancery and Divorce Acts are very general and flexible. They permit and authorize courts in such matters to fully protect and secure the payment of alimony if the defendant has any real estate, either by making the payment a specific lien or compelling the defendant to secure payment by giving a bond or mortgage.

We are constrained to hold that that part of the decree in the divorce case, which ordered the payment of a certain sum as alimony semiannually, was a decree *in personam* against Wallace and as it was not made a lien specifically on any of the land held by him, it was subject to the same limitations as a judgment at law and ceased to be a lien at the end of a year from the date of its rendition, unless an execution shall have been issued thereon within a year, and that Nichols having bought the land more than a year after the rendition of the decree, and before any execution was issued, took it discharged from any lien.

What has been said in reference to the permanent alimony applies also to the temporary alimony. The decree of the Circuit Court is affirmed.

*Affirmed.*