*In re* MARRIAGE OF BEATRICE BJORKLUND, Petitioner-Appellant, and A. DALE BJORKLUND, Respondent-Appellee.

First District (1st Division)    No. 79-1383

Opinion filed August 25, 1980.—Rehearing denied October 20, 1980.

Eugene L. Bennett, of Chicago, for appellant.

Mitchell J. Overgaard, of·Chicago, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This appeal stems from an action for arrearages brought by petitioner, Beatrice Bjorklund, against A. Dale Bjorklund, the respondent. The trial court ruled that an arrearage had been proven but allowed a set-off for amounts paid by respondent directly to his children as support after their emancipation. The court also denied petitioner's request for interest on the arrearages. Additionally, attorney's fees in the amount of $600 were granted to petitioner. The pivotal issue raised by this appeal is whether a noncustodial parent may unilaterally reduce unallocated child support as each child is emancipated by reaching the age of majority. Petitioner also urges that the trial court should have allowed interest on the accrued child support and awarded her a greater amount as attorney's fees.

We affirm in part, reverse in part, and remand.

On May 5, 1972, a decree for divorce was entered granting petitioner's complaint for divorce. The decree provided *inter alia* that petitioner should have custody of the parties' minor children: Diane (age 14), Randall (age 11), and Nancy (age 8), and that respondent should pay to petitioner $400 per month for child support. On December 28, 1978, petitioner filed a petition for a rule to show cause and other relief seeking $6,910 in arrearages, an increase in child support, and financial assistance for Randall's educational expenses. Respondent's amended response alleged that, as Diane and Randall reached majority, he made pro-rata unilateral reductions in the child support payments made to petitioner and began to make payments directly to each child of their pro-rata share of the total support payments. In his amended response, the respondent also sought the care, control, and custody of the parties' minor child, Nancy, or in the alternative, a reduction of his child support obligation both prospectively and retrospectively. The request for a change of custody was dropped prior to the hearing.

The record reveals the following facts which are pertinent to our determination of the issues raised by the parties. On February 25, 1975, the parties' eldest child, Diane, attained the age of 18. At this time she was a nursing student at St. Olaf College in Minnesota, living on campus and was the beneficiary of a scholarship which paid her tuition and part of her room and board. In March 1975, respondent began to pay directly to Diane the amount of $134 per month and reduced the amount paid to petitioner by this same amount. When Randall became 18 on June 23, 1978, the support payments to petitioner were further reduced and Randall also began to receive his support payments directly. These payments continued when he entered Moorhead State University and took up residence on its campus. The direct payments to both Nancy and Randolph continued throughout

their college careers. At the time of the hearing, Randall was still in college and still receiving support from respondent, but Diane's payments had terminated because she had graduated from college and married. During their college careers, each child spent vacations with petitioner. Despite the fact that each child received a scholarship which paid most of their tuition and room and board and earned money from summer employment, each obtained loans to further augment the money given to them as support by respondent.

During the time that respondent was making child-support payments directly to his adult children, petitioner made no complaint to him concerning his unilateral reduction in the child support payments. Petitioner did make known her dissatisfaction with this approach to Diane, however, who informed her father of her mother's dissatisfaction. It should be noted that respondent made payments for the children's medical expenses during this time period and made cash gifts to the children on special occasions in addition to the aforesaid support payments.

At the hearing, the parties agreed that the amount of the arrearage was $7,175. The amount paid by the respondent directly to his adult children was estimated to be between $5,200 and $5,300. The court also heard testimony and received into evidence affidavits from each party concerning their assets, income, and expenses. The court ruled that the respondent should increase his support payments from $135 to $250. No appeal has been taken from that portion of the order. The trial court also ruled that respondent should be given a set-off against the $7,150 arrearage for the $5,290 directly paid as support to the adult children. As such, the total arrearage amounted to $1,860. The trial court allowed the set-off because the respondent had not failed to make his child-support payments but had merely shifted the focus of his payments to his children. The trial court observed that the petitioner had made no direct protest about the reduction to respondent until this action was filed and that a recovery of the total arrearage would represent a windfall to petitioner. The trial court also denied petitioner's request for interest on the accrued arrearage, indicating that the respondent had acted in good faith.

During the hearing, the court also heard evidence regarding the petitioner's attorney's fees. Petitioner's counsel testified that he put in approximately 35 hours at a billing rate of $65 per hour. While this totalled $2,275, he concluded that a reasonable fee would be $2,000. The trial court, while noting the quality of counsel's work and that the reasonable fee for his work would be $2,275, stated that he could not award fees in that amount where the total arrearage was only $1,800. The court assessed the respondent $600 for attorney's fees. It was estimated that petitioner's gross income at this time was $13,000 and respondent's was $25,000. It should be noted that petitioner's counsel had a contingency contract with petitioner

whereby his fee would be based on the amount of the arrearage which was ultimately recovered in this suit.

■■ The question of whether, under our new act, a noncustodial parent may unilaterally reduce unallocated child support as each child is emancipated by reaching the age of majority has been determined subsequent to the oral argument of this case. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12; *In re Marriage of Rosenbaum* (1980), 85 Ill. App. 3d 931, 407 N.E.2d 711.) In *Finley*, the Illinois Supreme Court determined that section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 510(c)), which provides, *inter alia*, that "provisions for the support of a child are terminated by emancipation of the child," does not allow a pro-rata reduction in child support payments upon the emancipation of a child. In so holding, the court recognized that a child support award may not adequately provide for the needs of the particular children concerned. This possibility exists because the financial ability of the noncustodial parent is a factor in determining the amount of child support to be awarded. (Ill. Rev. Stat. 1977, ch. 40, par. 505(5).) Furthermore, allowance of pro-rata reductions in support would ignore the fact that the physical, emotional, and educational needs of children differ and that it is the individual needs of each child which are to be considered in the award of child support. Ill. Rev. Stat. 1977, ch. 40, par. 505(4).

The court also emphasized that modification of child support payments is solely a judicial function to be administered by the court in its discretion. As the court explained:

> "It is the function of the court to determine whether there should be a *pro rata* reduction in lump-sum periodic support payments when one of several children is emancipated, or whether other equitable considerations require that the reduction be a lower amount, or in fact whether there should be any reduction in the payments * * * The responsible parent should petition the court for a judicial determination of the amount the support payments should be reduced due to changed circumstances." *Finley v. Finley* (1980), 81 Ill. 2d 317, 320.

■■ The factual circumstances of the instant case differ from those of *Finley* and other cases in this area (*e.g., Storm v. Storm* (1973), 9 Ill. App. 3d 1071, 293 N.E.2d 633), in that respondent did continue to provide for the support of his adult children after he unilaterally reduced the amount of the support payments made to petitioner. However, we do not find that this difference warrants our distinguishing this case from *Finley*. Under the instant divorce decree, the $400 child support payments were to be paid to petitioner to provide for the support of the minor children. As noted in *Finley*, an unallocated child support award does not contemplate an equal

distribution of the support award for the support of each child as each child's needs differ. While it is apparent here that respondent's intent in shifting the focus of his support payments was not to reduce the amount he provided as support, the direct payment of support to the adult children did potentially act to modify the distribution of support to the parties' children. Under *Finley*, we cannot condone any modification in either form or substance in the child support payments from that ordered by the trial court. To do so would ignore the individual needs of each child as required by the new act (Ill. Rev. Stat. 1977, ch. 40, par. 505(4)) and would undermine the function of the court to determine any change or modification in child support payments. Accordingly, we believe that it was error for the trial court to allow a set-off against the arrearages for the amount paid directly by respondent to his adult children as respondent never petitioned the court for modification of the child support award.

■■ The respondent argues that application of the principle of equitable estoppel should bar a judgment for the full amount of the arrearages. This argument was rejected in *Finley* because the husband failed to prove that he relied upon an act or omission of his wife in altering the amount of support which he paid. Respondent would argue that he did prove reliance. He alleges that petitioner never confronted him over his unilateral action and, in fact, only made her objection known to him through a comment made to their daughter Diane shortly after Diane's emancipation. We do not agree that respondent could justifiably rely on petitioner's relative silence on this matter in light of the existence of the divorce decree which provided for the payment of support to petitioner. (*Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 323 N.E.2d 571; see *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 390 N.E.2d 488; *Lewis v. Lewis* (1977), 48 Ill. App. 3d 281, 363 N.E.2d 106.) Rather, we believe that respondent modified the provisions of the support award because he felt that he could shift his payments to his adult children without adverse consequences. See *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12.

■■ The petitioner argues that the trial court should have allowed interest on the amount of the arrearage. The supreme court laid out the rule regarding the allowance of interest on arrearages in *Finley*. The court stated:

> "We therefore conclude that the allowance of interest on past-due periodic support payments is not mandatory as contended by the plaintiff, but lies within the sound discretion of the trial judge, whose determination will not be set aside absent an abuse of that discretion." (*Finley v. Finley* (1980), 81 Ill. 2d 317, 332.)

After an examination of the record, we cannot say that the failure to allow interest by the trial judge in this case constituted an abuse of discretion.

Here, unlike the situation in *Finley*, the respondent did not reduce his payments in order to relinquish his support of his adult children. Moreover, unlike the husband in *Finley*, respondent did not enjoy the use of the additional money during the interim between the reduction of the support payments and the outcome of the action for arrearages. For these reasons the trial court could have determined that the respondent acted in good faith and that interest was, therefore, not appropriate.

Petitioner next argues that the amount of the attorney's fees awarded was insufficient. The trial court below granted an award of $600 for petitioner's attorney's fees based on the amount of the arrearage which was recovered. In light of our conclusion today that the trial court erroneously reduced the amount of the arrearages due on the basis of the set-off against the payments made by respondent to his adult children, we find that this cause must be remanded to the trial court for a redetermination of the issue of attorney's fees.

Accordingly, the order of the trial court is reversed and remanded as to the amount of the arrearages due and the award of attorney's fees, but affirmed as to the disallowance of interest.

Affirmed in part, reversed in part, and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.